Mr. Carlson, good morning. Good morning, counsel. Thank you for your police support. This is Bernard today, a prior case involving NARDS. This is a rather unique case, since there is no Illinois case finding insurance coverage under personal automobile policy in Illinois for a similar circumstance. Of course the court has all the briefs, but it involves, as the court knows, an injury to a Ruby Boland who had a personal automobile policy with Country Preferred Insurance Company and who went to a Menard's store to make a purchase, like of course thousands of people go to stores every day, drive their vehicle, walk, however. Menard's was insured with Zurich Insurance Company for its premises liability. Ms. Boland tripped and fell at the store on the premises, alleging that the store maintained its premises in a negligent fashion and allowed debris and other material to accumulate in all the sidewalks, aisles, parking areas, exits, entrances, and failed to warn of this debris removal, failed to remove it, failed to make any inspection, failed to maintain the place in a clean manner without the accumulation of debris and material where people invited to the store would encounter it and pose a risk of injury to them, which she alleges was the risk that she encountered and caused her injuries in this case. In an interesting twist, Menard's, through Zurich, sought coverage for its liability under the victim's personal automobile policy. They filed a declaratory judgment against Country and the trial court ruled on a motion for summary judgment that there was a duty to defend Menard's under the automobile policy issued by Country Preferred. The automobile policy which provides coverage to someone who is using the vehicle with permission, either anyone using the vehicle or using it with permission of a person authorized to give permission, basically. And that the liability applies to liability that is resulting from, not arising out of, but resulting from the ownership, maintenance, use of an insured vehicle. Although what we're looking at, Dean Noble, is whether or not there was a duty to defend. We're not looking at the causal connection between the... Right, causal connection, but the courts have analyzed that issue because you have to qualify as an insurer in the first place under Edison v. Fay. So the trial court found it comes under the use provision of the policy, correct? Right, looking at the actions of Boland. And it's interesting to look at the court's reasoning here because that's where I think the trial court erred, in that it had analyzed the case as if Boland was the negligent party. For example, for the regardless of negligence in the maintenance of the property, Boland's actions originated from and were incidental to the use of her vehicle. The fact that she might get hurt while loading the vehicle is reasonable and foreseeable. Now Boland was the one suing, not the one being sued. All the cases that we talk about in the briefs, like in Toler, the person being sued was the name insured who was loading a rifle, unloading, sorry, a rifle in his vehicle, and because he had to by law, couldn't transport a vehicle in a hunting trip, couldn't transport a rifle with ammunition in it, so he had to unload it in the vehicle. The rifle went off and he injured a third person who sued him, and the question was whether he had coverage under his own automobile policy, whether it was connected to a use of the automobile, which the court found in that case, basically I think they applied a but-for test, and they found that it was. The use here was, there was permission for the Menard employee to load the bricks into the vehicle. There was permission to load the bricks, but the bricks didn't cause any injury to Boland. There was no brick, like in the Wisconsin case, they cited where the lumber being loaded was dropped on the plaintiff and caused the injury. There was no brick that caused injury to anyone, like the rifle that caused the injury, like if the brick had gone through the windshield or caused property damage or caused injury. In the Wisconsin case, the lumber was being loaded and the lumber was dropped and injured someone. Here, like if Boland, for example, was assisting in loading bricks and she dropped a brick on a Menard's employee, would she be possibly covered for her negligence in injuring someone while loading her own vehicle? Because again, the trial court talked about but-for Boland being there in her vehicle. Now, of course, there's many, and the third district has adopted its own test in the Armageddon case, which is a two-to-one decision, but they rejected a but-for test and they adopted a test that, if I can get the words exactly right, that was whether it was the negligent act causing liability. The negligent act, and here the negligent act, of course, there's no brick being dropped on it. The negligent act is Menard's... The person was putting bricks near the Menard employee and became entangled with some other debris. Well, no, we don't know. The allegations are that they maintained the premises in a negligent fashion, that there was an accumulation of debris. If it was, how could you warn, if it just happened just then, you couldn't have warned of it, but the allegations are they failed to warn of this because the debris is everywhere, according to the complaint, and whether she had a car, and that gets another issue here, of course. What difference does it make whether it was a car to her injury, whether it was a wheelbarrow, a shopping cart, a flat cart? She's in a retail store purchasing items that a store is selling. It could be loaded. What was it about the car that caused this injury or had any causal connection as opposed to whether it could have been a shopping cart? In the beginning, did it make the distinction between whether or not somebody is liable versus whether or not the duty to defend was triggered because of the use? Well, right, but then the courts analyze it in terms of whether someone is using the vehicle because is the vehicle just there? Because, yeah, someone, there's a complaint that mentions that someone was, well, they went to the site of the gang fight in a car, and they shot the defendant. Does that trigger the use of a car because they shot somebody at a gang fight? Is that an allegation? That's why the courts get into the allegations of looking at the use because it's not like, they're not saying that the debris was caused by the car in any fashion. I understand, but I mean the... How do you get to that? As I understand it, the use the judge found is they were loading bricks into the car. A Menard employee was loading bricks into the car. The other person was helping, picking up bricks and so forth, placing them near the Menard employee. Right. Allegedly became entangled and suffered an injury. Right, but for her doing that or participating in that, it wouldn't have caused it. That's blaming her. That's not looking at who is the insured to be triggered to defend. Menard is not Boland. If Boland was participating in loading and caused it, then she might be contributory negligence in the tort case. The fact, you know, looking at Menard's argument, they argue, well, she drove to the scene of the accident in the car. Well, think of that, your honor. Every time you go to a shopping store, a grocery store, and you're in the parking lot, and they bring your, you make your purchases, and they help you transport your purchases to load into your car and then you trip and fall in the parking lot because of an unnatural accumulation of ice and snow or a deep, big hole in the parking lot. And that's the same, of course, you took a car to the site. What did the car have to do with the hole or the ice and snow? Is it every time that you're, then the store is insured for its liability under the person's automobile policy? You go to a restaurant, and the valet opens the door for you, and you step out into a hole or into an unnatural accumulation of ice. You are exiting, you're unloading or loading from the vehicle, and then the store, the restaurant is insured because right outside in their sidewalk, they had a five-foot hole that went down to the sewer? I mean, is that but for, does the trial court apply the but for analysis, but for going to the store in her car? She wouldn't have, and participating in the purchasing process, she wouldn't have been injured. But of course, that had nothing to do with a car. You don't need a car to buy stuff at Menards. You don't need a car to go shopping at Menards. You could be, and that's what the cases talk about the situs, whether it was just a coincidence that the motor vehicle, the situs where an accident happens in a, where someone discharges a rifle and a car is normally not covered. The Tolar case found it was covered for the perpetrator, or the, not the, well, the person unloading the vehicle that, unloading the rifle that discharged because he had to do that because of law. But normally, you wouldn't need a vehicle to use a rifle. Here, you don't need a car to purchase bricks. And what does bricks, purchasing bricks have to do with the negligence is the existing condition of the premises. Not that Menards was dropping bricks on anybody, or that damaged her car by dropping bricks on her, that she hurt somebody else when she used the vehicle. Because it's Menards' liability for how it maintained its premises. And by the allegations of the complaint, there's no trigger of Menards using the vehicle, which the Schultz case talks about using the vehicle as you're using it as a purpose of transport or some other type of means. Well, if I understand this correctly, there's coverage for third parties if they are permitted users of the vehicle. Right, when they're using the vehicle, when the liability rises out of the… Trigger of duty to defend. And part of using a vehicle could be loading and unloading the vehicle. Is that right? You can, right, if the person is using the vehicle, right, if the allegations would have to be that the person was loading the vehicle when their liability resulted from the loading of the vehicle. And here the allegations are the liability resulted from the maintaining of the store in a negligent condition with debris spread everywhere. That's not the allegation. It didn't say Menards, you know, while loading the vehicle hit her with debris or something. The debris was on the ground. They're saying, or hit her with the bricks, like again, like in the Wisconsin case they tried to say, which was interpreting the Wisconsin statute on who was a permitted user, a different standard than here. They dropped the lumber that they were loading on the person. They didn't drop the bricks on her. She didn't drop the bricks on anybody. This was, like what if someone was in the shopping, a motorized wheelchair that was insured under a modeling policy in the store and was purchasing goods and the whole shelving fell upon them? Well, they were in the first place loading their shopping cart or their vehicle, their motorized wheelchair, and because of the way the store maintained the premises, it fell upon them while they were in their motorized vehicle. I mean, it just doesn't, that's why the courts don't just, in the duty to defense state too, they look at, they look at you have to qualify as an insured, and what are they saying? You just can't have a, you have to have some causal connection. You can't just have the presence of the vehicle being there, because there was no causal connection between the vehicle. In the Amanochan case, the insured was, you know, his car broke down, he was walking the side of the road, and he created a hazard. He was the torque feeser, and it was whether he was using the vehicle so that the victim, who swerved because of his alleged negligence in being in the middle of the road, was aroused out of a motor vehicle. Here the Menard employee was helping load the vehicle. Well, he was not suing the Menard employee, he was suing Menard for the heavy debris. Which is one of the definitions of using it, and the plaintiff was helping load the vehicle with the bricks, and during that process, loading the bricks, that's when allegedly she became detained. Well, not really. They allege differently. They allege that she was caught up in the debris in the store. You don't have to have, you don't have to load, to purchase goods at a store, you don't have to have debris in the aisles. Most stores sell goods without having debris in their aisles and exit ways and parking lots and entrances. There was nothing about the loading process that caused Menard to maintain a condition on the premises of debris and failing to remove it. That's not alleged there. They already had that existing problem there. She just happened to be in the store that had this problem. She happened to go there by car. She happened to load bricks through a car as opposed to a shopping cart or a wheelbarrow or a cart. But it was nothing, there was no cause of connection between the Menards. Now it's like an employee, it's nothing alleged about the individual employees that were helping her. It's about Menard's store maintaining premises that had debris, which was allowed to accumulate and spread throughout the store. I understand what you're saying, but you're talking about the liability, and what I'm asking about is... I'm talking about the allegations and the complaint. I'm talking about the definitions and the policy, whether the duty to defend is triggered. Yeah, and I don't think it is, Your Honor, because it doesn't allege that you... Liability resulting from the ownership or use of a car. It's not just that she was there in a car and loading. It says liability resulting from. Are they saying the liability is resulting from the loading of the car by Menards? They're saying the liability is resulting, they're alleging the liability is resulting from the condition of the premises. Counsel, you have two minutes. Her complaint does not allege that she was assisting with the placement of the bricks into her vehicle. No. No. It says that she pulled to an area, and the Menards employees were loading these bricks. Apparently. She might have been in, you know, this is again supposition, whether she was like, Oh, I like those bricks better than all these bricks. I thought there was something about selecting bricks. Yeah, I mean, there's something that maybe, you know, maybe the customer is saying, Oh, those look prettier than these, or I like that color, or those are broken, or who knows. Wasn't there something about the plaintiff selecting bricks and placing them near the Menards employee? Those are the bricks I want, or something like that. Yeah, she might have done, you know, what role she picked, like anybody in the store, like you're picking apples and oranges, these look bruised, these don't, I don't like these, and then because you're picking those apples and oranges, and then there's a crate in the aisle way that the store left behind, how does that deal with the inherent use of an auto as an automobile? Where are we getting to in this case? Now, every time someone goes to a store, they're going to be buying things, and if every time someone slips and falls, if they came in a car, they're going to be loading it eventually, or maybe they are loading it through an employee taking groceries out to the store, or people do. You know, obviously, large stores, large purchases, they do have employees to assist them in taking it out to the parking lot, and then they're going to load it into their motor vehicle, and then if there's this big patch of unnatural ice that they're liable for, then is the auto insurer or their own auto insurer liable for their own injuries that aren't caused by its negligent maintaining of the premises? But that, again, liability is a different question than whether the duty to defend. Right, and that's why duty to defend, but the duty to defend, that's what they talk, you have to still qualify as a potential insurer at first, and that's what these cases talk about. They still, they weren't all dealing with just indemnity or defense, they were also dealing with defense as well, and whether, you know, you have to qualify as a permissive user for, you have to be alleging, and they look at how do you interpret that, it doesn't just require you to allege that a car was present. The case law says to get to that duty to defend, you have to have this causal connection, you have to allege at least this causal connection between the use of a car as a car. I mean, thank you. Mr. Carlson, before you sit down, there's a distinction between the duty to defend and the duty to indemnify. Correct. And it seems as though the duty to defend arises just because you're an other insured. Well, I don't know whether they're uninsured because they can't be another, they're not named in the policy, they're not, they're only another insured where they're using the motor vehicle, and in Schultz, of course, the Schultz case talked about what use is on the Supreme Court, and use was like, for example, where you're directing a motor vehicle or someone there, you're not using the vehicle, you have to be using it as a means of transport or some connection. But your policy defines use as loading and unloading. I mean, it includes those in the terms of the policy. Is that not correct? Well, right. But she was injured while she was arguing there was loading and unloading going on, but they're not alleging that the loading or unloading was any cause, it says, for liability resulting from it. So there has to be some allegation triggering a liability based on loading or unloading, and there isn't. But isn't that – There isn't. There isn't an allegation like that, so you can't get the duty to defend is not triggered. Isn't that relative to the duty to indemnify? No, because there has to be – Liability isn't the duty to defend only if you are uninsured. Yeah, but you have to first, under Addison v. Fayette, you have to qualify as an insured first. So how do you get an insured? Because you look at the complaint, it doesn't allege Menards was driving a vehicle or operating or owning a vehicle. The policy doesn't name Menards in any fashion. It says somebody only insured for liability resulting from the use. So what was the use by Menards of the motor vehicle that was creating liability? There was none alleged. It was alleged they were negligent. Your policy says the use was loading and unloading. But no, but the predicate language of that says liability must result from. So you must allege the liability results from the loading or use of a vehicle that you're operating basically with permission, which doesn't allege here. They're alleging the liability resulted from the maintaining of the premises. While she had a vehicle there, they're not alleging that they got hurt because Menards was improperly loading the vehicle. They're not alleging that in any fashion. Any liability was based on the loading of the vehicle by Menards. It just isn't there. So there's no allegation to trigger any duty to defend under that analysis is our argument, Your Honor. Thank you. Thank you. Mr. Andrews, good morning. Good morning. Good morning, Counsel. Good morning, Justices. May it please the Court, my name is Tony Andrews, and I proudly represent the plaintiff in this matter, Menard E. And it is new ground that we are covering here today. I think it's very simple ground to cover, but it is going to require us, I believe, in my few initial minutes to kind of clarify these facts that we've been talking about and I've heard Mr. Carlson reference. And I think it is important to emphasize the distinction that this panel has recognized in distinction of duty to indemnify and duty to defend versus even a liability analysis, which we appear to be trying to be conducting here, too. But this is not about a verdict that we want to tip over. This isn't about some allocation of responsibility for the accident. This is about triggering a duty to defend. A very relaxed standard, a very relatively easy standard under an insurance policy, duty to indemnify, much bigger question, much tighter requirements, but a duty to defend is first. And all we have to establish, which the trial court readily found, is that the actions could potentially be within coverage. The duty to defend arises, is triggered relatively easily if there's potential coverage. And here, there is plenty of evidence of potential coverage, and the duty to defend was triggered under these facts. And the facts that are important to emphasize, and Justice Carter did accurately recall that the plaintiff's complaint, and that would be Ms. Boland's complaint, Ms. Boland's complaint could not be any clearer as to whether we were doing, was using the vehicle, and whether we were loading the vehicle. Her complaint almost was drafted as if this question was going to be before this court someday and to make your job real easy. Her complaint uses the word load about seven times, and her complaint alleges under the direction of, so there's the use, is clearly loading, because their own policy, as Justice points out, says use equals loading. That is in the record at page 34, and their country's own insurance policy says using a vehicle including loading or unloading. Ruby Boland very carefully puts in her complaint the word loading about seven times. Clearly we are loading, so we are clearly using. There's also ample evidence here in their own complaint that we were permissively doing so. We were using her vehicle with her permission. She drives up, we help her, and as Justice Carter points out, and Justice O'Brien had a question on that point, she was actively working the loading. She wasn't just sitting back in her car waiting for the young lad to put these bricks, by the way, 40 bricks. This isn't boom, boom, we're done. This is a process. This is a 40 bricks, and how do I know 40 bricks? That's in her complaint. I'm not making it up. It's in her complaint. That's in paragraph six of the plaintiff's complaint, which is found in the record at C34. How was she helping? How was she helping? Well, we can tell by exactly by reading the complaint. At paragraph ten, pardon me, paragraph nine of the plaintiff's complaint found in the record C34, at that time and place, the loading continued while Ruby looked for good bricks from the stack and placed them within reach of the Menard's employee, who then loaded the bricks in her car. So she's actively doing it. I like that red one, I like that nice sandy one, I want this one. Oh, and let me bring them over to you, and you put them in my car. She's actively loading. She's a participant in the process. What's the relevance of that? Well, the relevance is pretty much that she is loading. I mean, we're loading, too, but she's loading. She's assisting. I mean, we're a team, really. She's put this, we're a team. We're both loading. Counsel wants to make a lot of hay out of, well, who do we look at here? Do we look at Boland's conduct or do we look at the Menard associate's conduct? Well, they're both doing the same thing. We may be more actively engaged because we're actually picking them, putting them in the car, but she's moved them from the place of selection to his easy reach. We are both loading the car. And none of that caused her accident. Well, it actually did. Or at least it is a fair inference that it could. And all we have to do at this level is could it potentially be within coverage. Because if you read Ruby's complaint, she doesn't just say what Mr. Carlson said, there was this accumulation of debris over time. Her complaint actually says it was packaging material on the ground near the loading site. Where does packaging material come from? They don't just say loose debris. This is just clutter. This is packaging material. Where do you get packaging material from? Loading 40 bricks off a pallet of 80 bricks, you've got those big straps, those big plastic straps, or actually they use metal ones for the bricks. Plus you have that big shrink wrap thing that keeps the pallet from breaking. So you're asking us to assume. Well, we don't need to because her complaint says packaging material. And at least it was near the ground. And her foot became entangled in it. It is a fair inference. And again, we only need to be potentially within coverage. We don't need to make the final resolution, yes, it was destined because of that. All we have to do at this stage, which the trial judge found, was it was potentially within coverage. The duty to defend is triggered. Now, discovery takes place. A lot of analysis can take place later. But at the early stage, duty to defend is triggered by the mere potential that this injury, her tripping and being strangled in her feet, was due to the loading process. It is a 40 brick process. It is not unfair to infer that if she's got a pallet and she's moving 40 bricks, that she's moving about, she could have tripped over the pallet for all we know. That would be part of the loading process. She could have tripped over any number of things. Her feet got tangled. She could have put her foot between the slats of the pallet. That's part of the loading. So she's using her vehicle. We are using her vehicle. We are loading and we're doing permission. So the Menard associate wearing the blue apron is an insured under her motor vehicle policy. It is a little odd, but it's a crystal application of her policy. Users with permission loading equals insured. And if it's related to... I see that he is, without question. He's putting these things into her vehicle. How is it that her being injured, not putting anything in her vehicle, but in a lot where she's setting things over packaging material, but there's more things in that lot than bricks. There's a lot of things in that lot. And they don't allege that the straps and that came from those bricks. What is the reason, what's the certainty or the reasonable inference that you can make that just because he, if he was injured, would have been insured. That Menard is somehow insured because she was injured. Well, both of them are insured because we're both loading and we're both users. Both. They're both insured. She's placing them. Right. Which is part of the loading process, which is their words and their complaint. She's already insured. She is. So we don't need to worry about her loading. And we're insured too. The question is, can we be insured under her policy? And we are, by application of pure contract and law, we are a user. Just like the Wisconsin court found that yes, Menard is insured. And actually, technically, they're not insured. They're self-insured up to a level. At this level, it's actually Menard's money. Zurich is only a third-party administrator. But the point is, we can be uninsured, we are uninsured, and they have a duty to defend. Now, there's a different analysis, which policy comes first. That's a question that was raised in the trial court. But it isn't apparently an issue at this level. But Menard employee is uninsured because we were using the vehicle, which is loading. No doubt we were loading. There's no doubt we're a user and there's no doubt we're a mission. So there is no doubt we're uninsured. I don't understand the concern that the counsel has about what analysis we use. We are uninsured. That means they have a duty to defend us, period. That duty is triggered, the duty to defend, a very mild, a very relaxed, a very early analysis. And I hear Your Honor's question about, well, what happens at the trial? There's all kinds of other facts we need to worry about at a trial, which obviously hasn't happened yet. Even just to the duty to defend, if I am assisting in the loading process, as you say, it doesn't matter if it's bricks or apples. I put my apples in my cart. Somebody is going to load that for me. And I trip walking out to my car. Now, so then Jewel Osco, that's where I'm at, they're insured under my vehicle because I've assisted in the loading process. I put the apples in the cart. Absolutely. It is unusual. It is odd. But it is technically an accurate application of their policy. Their policy, with their words, says users and loading. So you're absolutely right. I thought of a couple other analogies that were unique. If there was a pothole, but she was loading at the time. Now, whether it's her being a first-party claimant or a Menard employee or a Jewel Osco employee, if she is injured while loading, if it's while loading. Now, I agree it's different. We're talking about going from the store to go shopping. Different analysis. Because she's not using her vehicle. But if she is loading, if she's in the process of loading, yes, that's a covered event. Odd? I see some raised eyebrows. But if you apply their language of their policy, if she's loading, and if it's related to her loading. Now, I think you have to do an analysis. Is it related to loading? It couldn't just be she's skipping on the way. But if she's got a bundle of things in her hands and she trips because she doesn't see it, or she stumbles over a parking block while she's loading, and she goes back to the trunk to put the groceries in, and she trips over that little parking stop, if it's while loading, because she's using her vehicle at that point, then, yes, that's covered. And that's pure application of their contract language. Which I see the oddity of that. I hear the question. I hear, well, that seems kind of odd. Her insurance policy covers your parking lot? Well, if she's loading, yes. And that's exactly what the Wisconsin court... Couldn't there be a distinction? The law's a mysterious science in many ways. We're looking at these in this insurance contract. And when they talk about obligation to pay something, that language talks about the bodily injury or damage must be caused by an accident resulting from the ownership, maintenance, or use of the insured vehicle, including loading and unloading. Of course, if someone just falls and blocks away, that might be determined not to be the result of loading or unloading, but something else. But now whether or not you're insured is a different question under this policy. That's whether or not you're considered in the definitions. And it was using the vehicle with permission, and that includes loading and unloading, to be an insured. Are they different or not different? If you read the other section, before you can get to coverage, if you read the other section with it and then have to make the determination before you find that the person's insured to trigger the duty to defend, do you have to find that it's dealing with something from the ownership, maintenance, or use, that it was property damage or bodily injury was covered by the accident resulting from the ownership? Yeah, you're right. I think you have to first, and even counsel acknowledge, you have to first determine whether or not you're an insured. And that is in Section 1, page 2 of the policy, in the record in CE 43. All we have to do is must be caused by an accident resulting from use. And obviously use we've covered as loading. We got that. It actually says right there in the policy, use as loading. So we have to result from use. We have to result from loading to be an insured. Now there's a different analysis maybe for indemnity. We're not here talking about indemnity. And maybe even a more thorough analysis that Justice O'Brien wants to engage in as to whether liability and how much it was his fault, how much it was her fault, was it all from loading. The question first is, we're at the preliminary stages, is are we an insured and do they have a duty to defend? And that's a very light threshold. It has to result from the use. Counsel, you have two minutes. Thank you. And here use is clear as loading. And that's the first question that's just triggered. And that's a duty to defend. And that comes first. Which brings me to, I'd like to address the Wisconsin case briefly. It's a very similar legal analysis. They have the same permissive user concepts. They have the same use loading concepts. They also tendered to an auto carrier. And Wisconsin also had a rifle case just like this one too. And they said that's enough. So that brings me, and while I do want to talk about the Wisconsin case, and it's important, it reminded me of a remark that Justice has raised about, well, how much, how close does it have to be? Does it have to be nearby? Well, this court in 1996, in the case that we can't pronounce, a Ronald John case, said that walking down a highway after a breakdown was close enough to the use of a motor vehicle to be an insured event. So we've got something miles away, maybe moments away, a half hour away, I don't know, broken down gas. And it was obviously time. I don't know what the continuum was there, but certainly much further removed than we're talking about here where it's loading bricks. Did she trip on this? Did she not trip on this? Was she there? Was she helping? But the 3rd District has already found that walking away after a breakdown is close enough to be resulting from the use of the vehicle. If that tangential connection is enough, if that's sufficient to be resulting from, then I think surely a lady who is actively engaged in the loading process, doing some of the work, is something that results from walking about, milling about as she makes those assessments and assists, is certainly sufficient to result from the use of her vehicle. And the Wisconsin court found similarly, on a very similar analysis, different facts as counsel points out, the result is that a policyholder's own policy, which I understand you're kind of tipping it on its head, but a policyholder's own policy can sometimes be used, as Justice Carter pointed out, for a third party. If Boland loaned her car to her girlfriend and her girlfriend got in a car accident, Boland's insurance has to pay her girlfriend to defend. We're only talking about defense now. And if Boland's uninsured girlfriend using her car rolled over Boland's foot on the way out the driveway, that would also be an insured event. And Boland's carrier would have to pay Boland herself, because the user, the girlfriend, is a permissive user. So I recognize it may be an odd result. I recognize it's new here, but it is not absurd, it is not unsound, and it is not unreasonable. It's a pure application of contract and their complaint. And so I ask that you do the same as Wisconsin Appellate Court and the same as our Will County Trial Court and affirm for finding that the country did have a duty to defend its insured, the minority society. Thank you. Unless there's any other questions, I'll move on. Thank you. Thank you, Mr. Andrews. Mr. Carlson, rebuttal. Again, this idea of she's actively engaged in the voting process, she's actively engaged in selecting the apples and oranges in the store and putting them in her bag, and then actively engaged in assisting the shopping boy, you know, load it into her car and she trips on the... That's why when the language says resulting from the use, including loading of the vehicle, and the court's talk repeatedly defined what does use mean. Use means use of the vehicle giving rise to liability must be of the vehicle as such. That's the liability, it must be at least alleged. There's no allegation that the vehicle is being used. Why, again, that's why we talk about the situs or the coincidence of the vehicle. What if it was just a shopping cart? You don't have to put bricks into a vehicle. You can put bricks into a shopping cart. You can put them into a cart. What would be different in this case if it was a shopping cart? She would still be picking bricks. She would still trip on debris that's alleged to be present on the premises. You don't need a vehicle to have debris premises. Would you say there's a difference between the two sections, the one section dealing with whether or not you could be responsible for coverage, that is money, versus whether or not someone's an insured to trigger the duty to defend? I understand you're saying this is all crazy. This is all crazy, right? The crazy defense. This is like the Dickens story. Or ridiculous in Wisconsin. What did they say, ridiculous or absurd? I won't repeat it. But anyway, but the word determining based on the contract language in the policy. You look at an open plate and people throw in words like they say in the auto cases. Say someone said they got out of their vehicle and they aimed the vehicle on the top of the hood and shot at me from behind the vehicle, motor vehicle. Okay? Yeah, the motor vehicle is used repeatedly. Does that mean the liability arose from the use of a motor vehicle as a motor vehicle? Because the word motor vehicle is used repeatedly? Because the fact that Menard's employees were loading stuff? Is that what they're saying? They're not saying that they did anything wrong. It doesn't aware us that the loading did anything wrong. And there's nothing about a vehicle, use of a vehicle, that requires or involves debris in store lines. When the Mendogen case talks about risk reasonably contemplated by the parties, would the parties to the insurance contract, that's Boland and Country, expect to be liable for how Menard's maintains its aisleways and corridors where they just leave stuff spread out everywhere? This is the reason I'm asking the question about the policy. Because in the policy, before damages can be paid, before bodily injury can be paid, it has to be caused by an accident resulting from the ownership, maintenance, and use of the vehicle, including loading and unloading. But it has to result from that activity. Of course, here there was a process of loading and unloading that we're talking about. That's different, though, from whether or not someone's an insurer. Well, it says, we will defend any claimant liable to bodily injury or property covered by this policy. So what's covered by the policy? The only thing covered by the policy is bodily injury resulting from the ownership or use of an insured vehicle, including loading or unloading. So you have to have something to be defended. It has to be something alleging it's covered. And the use of the vehicle is defined in the court's case law as not just saying a vehicle is present. And that's what the judge says. But for her going there to the store in her vehicle and stepping outside her vehicle, she wouldn't have been hurt. Of course, she'd stayed home. She never would have got hurt. I guess what I'm saying is, the first determination you have to make is whether or not the duty to defend is greater. When you make that decision, do you have to decide the other one, too? Right, because it says, we will defend. This is the defense obligation in this policy. We will defend any claim or lawsuit alleging bodily injury or property damage covered by this policy. What is covered by the policy? You look at, does it allege something that's covered by the policy? And that includes you have to be using an insured vehicle, you know, because it says we will defend an insured, so you have to be an insured. You have to be using a vehicle with permission, so you have to be alleging that you're using a vehicle with permission that results in bodily injury from the use of that motor vehicle. And what do the courts talk about what that means? They talk repeatedly about how there has to be some causal connection. There has to be use of the vehicle as a vehicle. It can't just be the mere sight of it. It's not even the sight of it here, it's nearby. She came nearby. She had a vehicle nearby. It couldn't have been a shopping cart nearby. It couldn't have been any container nearby. Sorry. So, Mr. Carlson, does it matter what the debris was? I don't know if it matters what the debris was, because they're alleging this debris. He's trying to suggest that it was debris recently created by this selecting of bricks, that somehow they left. Does it really matter if they were negligent? And does it have to do with the use of a vehicle that you have debris? Is it necessary to have debris? When you load a vehicle, you don't have to have debris. People can throw stuff out, put it in a container. They don't just have to throw debris there, even if they were just creating this debris contemporaneously with their selecting the bricks. But, of course, that's not the allegations here. They're alleging that they maintained it, accumulated it. Who knows? But that's not the allegations here, that the debris from this particular picking of these particular bricks caused this injury. I don't think it makes a difference, but that's not the allegation. The allegations are that they maintained their store in a debris-filled condition. Whether that's true or not, I don't know. But if the debris was created by the process of loading the bricks? Well, I don't know. You have to – well, what's about loading that creates debris? You don't have to create debris to load bricks. Debris is – there's nothing about – you can put a brick in a car without creating debris. There's nothing – and there's no connection between the two alleged here, because it's not one and the other. You had to – like in the Tolar case, you had to unload the rifle to put it in the car. You couldn't transport it in the car, so the negligence was then – and during that process of unloading, the gun went off and it hurt somebody. But normally you wouldn't have to – in that case, if it was just put into a satchel or something, you don't have to unload it. So if it went off then, you know, there was a connection to the car because of the regulation that you had to unload it to put it in the car. But when they say the car is just the situs where someone's shooting from a car at someone, that doesn't trigger the use of an automobile, even though they're alleging they shot at me from a moving automobile. There are occasions where the duty to defend and whether or not there's insurance coverage for the liability, they're not always joined at the hip, are they? There are times where it's found to be a duty to defend, and yet after the result of the trial, there was no duty to – I mean, there was no obligation to pay any money because the trial has determined that it's not part of the – It's narrower. Yeah. Identity is narrower, typically. Yeah. I understand that, but here – So they make a distinction between those two things. I understand, but here we have to have those allegations of – injury caused by the use of a motor vehicle, which the courts interpret what does use mean. We have a number – we have a Supreme Court talking about use in Schultz, and we have other cases talking about use of a motor vehicle. It's not just the presence or the mentioning that there's a motor vehicle nearby because the loading had nothing – is not alleged to have anything to do with the negligence that results in their injuries. And the trial court respectfully misconstrued it by focusing on Boland, talking about Boland being there, Boland getting out of her car. Boland assists causing her own injury, basically. But that's – this is a claim by Boland against Menards. And now they're on her very own policy, auto policy, for how they maintain their store, which, again, this could be unlimited as we're managing the consequences from every time someone's going to a Jewel or Osco and taking their groceries out to their car, that, you know, well, we don't have to – why should we have to maintain our parking lot anymore? Just let the big holes there because we'll be covered under the auto policies of all our customers. You know, we don't have to do any – why should we hire anybody to do shoveling or snowing or repairs because our customers' auto policies will cover us for any accidents. But thank you. Thank you, Mr. Carlson. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand on brief recess for a panel change.